[No. 37048. Department Two. October 29, 1964.]

JOHN LOFGREN *et al., Appellants,* v. WESTERN WASHINGTON CORPORATION OF SEVENTH DAY ADVENTISTS *et al., Respondents.**

*Reported in 396 P. (2d) 139.

*John J. Kennett,* for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Frederick V. Betts,* for respondents.

WEAVER, J.—This suit is based upon two causes of action. The first is by Teryl Lee Lofgren, by her guardian ad litem, for damages for personal injuries suffered as a result of defendants' alleged negligence; the second is by Teryl's parents to recover (a) medical expenses incurred and to be incurred by them for Teryl's benefit; (b) $160 for wages lost by Teryl's father while transporting her for medical treatment; and (c) $5,000 damages for deprivation of Teryl's services during her convalescence and her minority.

Teryl Lofgren, 12 years of age at the time of her injury, was a pupil at the Kirkland Seventh Day Adventist School owned and operated by defendants. She was injured during a school recess while she and another pupil were playing on a manually operated merry-go-round located on the school premises. Teryl's foot became entangled in a rope.

The circular momentum of the merry-go-round wound the rope around the perpendicular axle upon which the merry-go-round rotated, and bound her leg against the center post. She suffered a compound fracture of the leg.

Plaintiffs appeal from a judgment entered after the jury returned a verdict in their favor for $5,000 for injuries sustained and $4,573.45 for medical expenses and loss of earnings.

Before discussing plaintiffs' assignments of error, it is necessary to consider certain procedural aspects of this case.

Plaintiffs moved for a new trial "limited solely to the amount of damages."

February 5, 1963, the court denied the motion for a new trial limited to damages only and entered judgment on the verdict.

April 19, 1963, plaintiffs served and filed a concise statement of the points on which they intended to rely on the appeal (Rule on Appeal 34(3)) and also filed a proposed statement of facts purportedly containing all of the evidence relating to the points set forth in the concise statement of points.

July 9, 1963, the trial judge refused to certify the proposed statement of facts. July 17, 1963, an alternative writ of mandamus was issued by this court directing the trial judge to certify the proposed statement of facts or to show cause why it should not be certified. After argument before a department of this court on September 13, 1963, an order was entered quashing the alternative writ of mandamus.

Plaintiffs then furnished the balance of the statement of facts and it was finally certified by the trial judge on November 12, 1963.

In the meantime, however, plaintiffs' counsel had prepared his printed appellate brief based upon the concise statement of points and filed it in this court on August 26, 1963. The assignments of error contained therein are the only assignments before this court.

Plaintiffs assign error to the court's refusal to give their requested instruction on Teryl's life expectancy.[1]

■ This court has, on numerous occasions, considered the propriety of giving or refusing to give, this instruction.[2] The rule is well stated in *DeKoning v. Williams,* 47 Wn. (2d) 139, 286 P. (2d) 694 (1955), wherein the court stated that it is proper to give the instruction where there is evidence of either (a) permanent injury, (b) future loss of earnings, or (c) future pain and suffering. Each of the elements is based upon a projection of the future effect of the injury.

From the medical testimony in the instant case, the jury could conclude that Teryl was permanently injured and would have future pain and suffering; hence, it would have been *proper* to have given the instruction.

*DeKoning, supra,* is the only case coming to our attention which holds that refusal to give the instruction was error. In that case the verdict was reversed, but there were other cogent reasons for the reversal. In view of *Fisher v. Anacortes,* 109 Wash. 191, 186 Pac. 271 (1919), in which the court said:

" . . . But if the rule be otherwise, the admission of the table [life expectancy] was harmless. In itself it had no probative value; that is, it conveys no information that is not the common knowledge of mankind. As evidence, it stands on the plane of a calendar, an almanac or a report of the weather bureau; it is but a convenient reminder of facts which the human mind cannot always bring to remembrance."

we doubt, if standing alone, refusal to give the instruction would necessarily be prejudicial error. See also *Shephard v. Smith,* 198 Wash. 395, 401, 88 P. (2d) 601 (1939).

---

[1]"I instruct you that a child 12 years of age has an average life expectancy of 57.72 years."

[2]*Sherman v. Seattle,* 57 Wn. (2d) 233, 356 P. (2d) 316 (1960); *Jay v. Walla Walla College,* 53 Wn. (2d) 590, 335 P. (2d) 458 (1959); *Holmes v. Toothaker,* 52 Wn. (2d) 574, 328 P. (2d) 146 (1958); *DeKoning v. Williams,* 47 Wn. (2d) 139, 286 P. (2d) 694 (1955); *Thompson v. Seattle,* 35 Wn. (2d) 124, 211 P. (2d) 500 (1949); *Fisher v. Anacortes,* 109 Wash. 191, 186 Pac. 271 (1919).

Although the instruction should have been given, its refusal was not prejudicial to plaintiffs. We note that plaintiffs' counsel in his closing argument stated:

"It seems to me, ladies and gentlemen, that this girl would have what, she is sixteen [later recognized as a misstatement; she was then fourteen] a life expectancy of what, fifty-sixty years? That means she is going to have some disability as long as she lives. You have to take that into consideration."

Next, plaintiffs urge that the court erred when it refused to instruct the jury that Teryl's parents were entitled to recover for "loss of services incurred in connection with their daughter's injury."

█ It is error to submit to the jury an instruction when there is not substantial evidence upon which to base the instruction. *Hughey v. Winthrop Motor Co.*, 61 Wn. (2d) 227, 377 P. (2d) 640 (1963), and cases cited.

█ The trial court, in its memorandum opinion denying a new trial, said:

"In my opinion loss of services of a minor child would perhaps require no proof in a death case. However, in this case the period of the child's disability was fixed and had terminated, yet there was no proof submitted as to the value of any services on the part of the child which the parents were deprived of by reason of her injury. It is for this reason that the jury was not instructed on this point."

It is not disputed that Teryl's parents have the *right* to maintain an action for the value of the loss of her services to them (as distinguished from loss of Teryl's earnings, if any) during her incapacity as a result of her injury. RCW 4.24.010.

From this, plaintiffs argue that they are entitled to an instruction on loss of services without proof thereof and cite *Hedrick v. Ilwaco R. & Nav. Co.*, 4 Wash. 400, 30 Pac. 714 (1892), *Harris v. Puget Sound Elec. R.*, 52 Wash. 299, 100 Pac. 841 (1909), *Otey v. Bradley*, 63 Wash. 500, 115 Pac. 1045 (1911), and *Sherman v. Seattle*, 57 Wn. (2d) 233, 356 P. (2d) 316 (1960), in support of their conclusion. We do not agree. The cases are not apposite. *Hedrick* and *Otey*,

*supra,* present a question of pleading a parent's *right* to maintain an action for the value of the loss of a minor's services. These cases do not go to the question of the quantum of proof necessary. In *Harris, supra,* which involved the loss of a minor's earning capacity, the amount of the recovery was stipulated. *Sherman, supra,* involved a minor's loss of earning capacity resulting from an amputated arm, not the loss of the minor's services to his parents.

Even though judgment may be obtained without proof of special pecuniary damages for the wrongful death of a child (*Skeels v. Davidson,* 18 Wn. (2d) 358, 139 P. (2d) 301, 149 A.L.R. 225 (1943)), it does not follow that a parent can recover for loss of an injured minor's services without proof that some services would have been performed. If there be evidence of the loss of services during temporary incapacity, or of future loss of services if the disability were permanent, an instruction would be proper; the valuation would then be left to the judgment of the jurors, guided by the facts and circumstances in the case. Plaintiffs' proof does not meet this test; hence, it was not error to refuse to give an instruction for loss of services.

After a 5-day trial to determine defendants' liability and the amount of plaintiffs' damages, if any, this case was given to the jury about 5:30 p.m. on a Friday afternoon.

The court gave 11 instructions to the jury. In view of the length of the trial and the nature of the testimony, the instructions were brief. This, of course, is not a defect but is commendable if the instructions encompass all of the issues and present the theory of both parties for the jury's consideration.

The jury's sole guideline to determine damages, if any, in the instant case is found in instruction No. 8, which, in part, reads as follows:

"If you decide for the plaintiffs on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate them for any of the following elements of damage proved by the evidence to have resulted from the negligence of the defendants:

1. "The nature, extent and duration of the injury;

2. "The permanent disability and disfigurement resulting from the injury;

3. "The pain and suffering endured and to be endured in the future as a result of the injuries;

4. "The medical and hospital expenses which were reasonably and necessarily incurred, and any such expenses reasonably certain to be required in the future;

5. "The value of lost earnings." (Numbering furnished by the court.)

Plaintiffs assign error to this instruction on two grounds: (1) it confuses the claims of the parents with the claims of their daughter; and (2) it does not adequately instruct the jury on plaintiffs' theory of damages that may be recoverable.

In instruction No. 5 the court instructed that "This lawsuit involves two distinct claims, one by the child who seeks damages for her injuries and the other by her parents who seek compensation . . . ."

Manifestly, the first three numbered clauses of instruction No. 8 refer to elements to be considered in determination of Teryl's damages, if any, and clauses 4 and 5 to elements to be considered in fixing the parents' recovery; but they are joined to define the possible recovery "for the plaintiffs."

Since two causes of action are pleaded, and the jury was instructed that the action involves two distinct claims, we cannot say that the jury was confused by instruction No. 8, although it would have been highly preferable and more articulate to have distinguished the damages that might be recovered under each cause of action.

■ Before discussing the second facet of plaintiffs' assignment of error to instruction No. 8 (which also involves assignments of error 5 and 6—refusal to give requested instructions), we point out that there is evidence in the record, if believed by the jury, to establish the following:

Teryl suffered a serious compound fracture of her right leg. As a result of the fracture, her leg is $\frac{1}{4}$ inch short. She has become hammertoed and has numbness over approximately two-thirds of the sole of her foot. This affects

her ability to play the organ and participate in physical activities. She has a wide, deep, 8-inch scar that "goes in a spiral fashion about her leg." Teryl testified: "It [the scar] embarrassed me if you're out on the beach or something and you have got this silly looking leg that everybody stares at." Further surgery, both plastic and corrective, will be necessary. Teryl testified she has fear of operations under ether and worries "whether the feeling will ever return to my foot or if the scar will be gone." Her leg will still be scarred after further surgery.

In short, the amended complaint alleges, and the record establishes, that mental pain, mental suffering, embarrassment and mortification were claimed elements of damages within the ambit of plaintiff Teryl's theory of the case. They are proper elements of damages to be considered by the jury if they are the natural and proximate consequence of the wrong. *Green v. Floe,* 28 Wn. (2d) 620, 636, 183 P. (2d) 771 (1947).

Either party has the right to have his theory of the case presented to the jury when there is substantial evidence to support it. *McGarvey v. Seattle,* 62 Wn. (2d) 524, 384 P. (2d) 127 (1963). The jury should have been instructed upon the mental as well as the physical pain, both present and future; therefore, instruction No. 8 is prejudicially deficient, and a new trial must be granted.

Plaintiffs' assignment of error No. 8 is stated as follows:

"The trial court abused its discretion in limiting plaintiffs' attorney to 40 minutes for his argument to the jury, and sending the case to the jury at approximately 5:30 p.m. on a Friday night, after having assured counsel: (1) that he would be available on the following Monday to finish the trial, and (2) that he would not place any time limit on the argument of counsel."

The record supports the facts set forth in the assignment of error. Both counsel had been led to believe that they would have the week-end to prepare argument. Instead, after the noon recess on Friday, the trial judge announced that the case would be presented to the jury as soon as the instructions were prepared. Motions of *both* counsel to

present argument on Monday morning were denied. In order to speed the trial and get the case to the jury Friday afternoon, the trial judge stated:

"I may ask you to put in your exceptions after the jury has gone out."

and

"If argument appears [during taking exceptions] I will require that you put in your exceptions after the case has gone to the jury."

The trial court's suggestion, although not carried out, is clearly contrary to Rule of Pleading, Practice and Procedure 51.16W.

Since there must be a new trial, and it is most unlikely that the same situation will arise again, we need not discuss this assignment of error further.

■ Should the new trial be limited to a determination of damages only?

In *Greenwood v. Olympic, Inc.,* 51 Wn. (2d) 18, 315 P. (2d) 295 (1957), the court said:

"We have on numerous occasions recognized that a new trial may be, and under proper circumstances should be, limited to the amount of damages only; but our cases have been entirely consistent with the general rule that the right to limit the issues, when ordering a new trial, should be exercised only when 'justice does not require the resubmission of the whole case to the jury.' *Nelson v. Fairfield* (1952), 40 Wn. (2d) 496, 501, 244 P. (2d) 244.

"It is generally held that it is only where liability is clearly shown that the issue of damages alone can be tried out without injustice to either party. *Lundblad v. Erickson* (1930), 180 Minn. 185, 230 N. W. 473.

"Where the inadequacy of damages is coupled with a very close case on the issue of liability, justice, for obvious reasons, requires a new trial upon the entire case. *Simmons v. Fish* (1912), 210 Mass. 563; 97 N. E. 102, Ann. Cas. 1912D, 588."

We have not deviated from the rule stated. *Myers v. Smith,* 51 Wn. (2d) 700, 321 P. (2d) 551 (1958); *Vaughan v. Bartell Drug Co.,* 56 Wn. (2d) 162, 351 P. (2d) 925 (1960); *Shaw v. Browning,* 59 Wn. (2d) 133, 367 P. (2d)

17 (1961); *Cyrus v. Martin,* 64 Wn. (2d) 810, 394 P. (2d) 369 (1964).

A new trial limited to the issue of damages is proper only when liability is clear and the amount of the damage is the crux of the controversy. *Zerr v. Spokane City Lines, Inc.,* 58 Wn. (2d) 196, 361 P. (2d) 752 (1961).

In *Lanegan v. Crauford,* 49 Wn. (2d) 562, 304 P. (2d) 953 (1956), the new trial was limited to a determination of damages; however, in *Myers v. Smith, supra,* it was pointed out by the same author that in *Lanegan* liability was free from doubt.

The record in the instant case is conflicting and discloses a close question of liability. There is evidence, if believed, that could result in the jury finding that Teryl was guilty of contributory negligence. The amount of the jury's verdict might suggest the possibility that the verdict was the result of compromise.

We conclude, therefore, that a new trial must be granted to retry all issues in the case.

A new trial on all issues poses a unique question. It is stated thus in plaintiffs' reply brief:

" . . . Under such circumstances [new trial on all issues], do the instructions on *liability* given by the trial court, and to which error was *not* assigned in appellants' opening brief in support of their *limited* appeal, become the 'law of the case' in the event this court grants appellants [plaintiffs] a *general* new trial? Does the trial court's action (to which error was *not* assigned in appellants' opening brief) in refusing instructions requested by appellants with respect to liability become the 'law of the case' in the event this court grants appellants a *general* new trial?"

This court favors the use of short records on appeal whenever applicable according to Rule on Appeal 34(3). Plaintiffs made a bona fide attempt to comply with the rule. They were, however, foreclosed of their appeal on a short record when this court quashed the alternative writ of mandate directed to the trial judge to show cause why he should not certify the short record on appeal.

Counsel have cited us no authority in this jurisdiction, and we have found none, in which the doctrine of the law of the

case has been discussed in relation to an appeal, or an attempted appeal, on a short record.

■ It is not necessary for us to discuss the many ramifications of the law of the case doctrine.[3] It is sufficient to note, that insofar as it applies to the instant case in its present procedural posture, the doctrine should be confined to actual questions noted and resolved by this opinion. To interpret or apply the doctrine otherwise would make Rule on Appeal 34 (3) a possible trap and penalty for the unwary, and would destroy the effective use of the rule *when the prevailing party appeals on a short record.*

The judgment is reversed and the case remanded for a new trial on all issues. Costs will abide the final determination of the cause.

It is so ordered.

OTT, C. J., DONWORTH, J. and RUMMEL, J. Pro Tem., concur.

HAMILTON, J., concurs in the result.

---

[3]*Kennett v. Yates,* 45 Wn. (2d) 35, 272 P. (2d) 122 (1954); *Stinnette,* "The Law of the Case Doctrine", 28 Wash. L. Rev. 137 (1953).